NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROY L. RAMBO, JR., | : |
| Petitioner, | :     Civil Action No. 14-874 (MAS) |
| v. | :     **OPINION** |
| PATRICK A. NOGAN, et al., | : |
| Respondents. | : |

### SHIPP, District Judge

This matter comes before the Court on Petitioner Roy L. Rambo, Jr.'s ("Petitioner")
Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), challenging a
sentence imposed by the State of New Jersey for the first-degree murder of his wife.[1] (ECF No.
1.) Respondents Patrick A. Nogan, Administrator, East Jersey State Prison, and John J. Hoffman,
former Attorney General of the State of New Jersey, (collectively, "Respondents" or the "State")
filed an Answer (ECF No. 11), along with numerous exhibits (ECF Nos. 14-24). Petitioner replied
(ECF No. 26), and filed numerous items of correspondence in further support of his Petition (ECF
Nos. 27, 29, 32, 37, 40). Respondents filed responsive correspondence. (ECF Nos. 30, 31, 39.)
The Court has carefully considered the parties' submissions and decides the matter without oral
argument. For the reasons stated below, the Petition is GRANTED.

---

[1] Petitioner subsequently filed an exhibit to the Petition, consisting of additional point headings in
support of his Petition that were missing from his original filing. (ECF No. 25.)

## I.  Background

On or about August 16, 2002, Petitioner was indicted for purposely and/or knowingly causing the death of his wife, Linda Rambo, in violation of N.J.S.A. 2C:11-3(a)(1) or (2), and for knowingly and unlawfully possessing a .380 caliber Taurus pistol with a purpose to use it unlawfully against the person of another, pursuant to N.J.S.A. 2C:39-4a.  (Ra. Ex. 1, Indictment, ECF No. 14.)

At the time of the indictment, Petitioner was a dentist and, prior to her death, Linda Rambo had worked in Petitioner's dental practice.[2]  (Answer 5, ECF No. 11.)  Immediately before Linda Rambo's death, Petitioner and Linda Rambo's marital assets primarily consisted of the following: (1) Petitioner's dental practice; (2) the real estate where Petitioner's dental practice was located, which was held in a tenancy by the entirety; and (3) the marital home (the "farm"), which was held in a tenancy by the entirety.  (Ra. Ex. 107, Oct. 15, 2003 Hr'g Tr. 10:6, 12:11-15:15, ECF No. 24.)

On August 23, 2002, Petitioner and Linda Rambo's son, Bruce Rambo, filed an order to show cause for the appointment of a temporary and/or permanent administrator and for temporary and permanent restraints with the Superior Court of New Jersey, Chancery Division in Warren County (the "Chancery Division").  (Ra. Ex. 108, Aug. 23, 2002 OTSC, ECF No. 24.)  Bruce Rambo sought to appoint himself as the administrator for the Estate of Linda Rambo, and sought to freeze all of Petitioner's assets and enjoin him "from expending any sums of money owned individually or as a marital asset."  (*Id.*)

---

[2] In addition to running his dental practice, Petitioner was "the keeper" of the couple's financial assets, such that it was normal practice for Linda Rambo to ask Petitioner for money to pay for her living expenses.  (Answer 5-7.)  Petitioner also appeared to handle the couple's finances even throughout a period in which he and his wife were separated.  (*Id.*)

Upon reviewing the matter, on August 28, 2002, the Honorable Harry K. Seybolt, J.S.C., of the Chancery Division appointed Bruce Rambo as the permanent administrator of the Estate of Linda Rambo and ordered that: "(1) all assets of Roy L. Rambo will be frozen, wherever located"; "(2) Roy L. Rambo or any of his agents or representatives is enjoined from entering onto any property owned either jointly or individually by Roy L. Rambo and Linda Ann Rambo"; and "(3) Roy L. Rambo is enjoined from expending any sums of money owned individually or as a marital asset."[3] (Ra. Ex. 109, Aug. 28, 2002 Order 1-2, ECF No. 24.)

On September 19, 2002, before the Superior Court of New Jersey Law Division, Criminal Part in Warren County (the "Criminal Part"), Petitioner explained to the Honorable John H. Pursel, J.S.C., that he was found ineligible for a public defender, yet also had his assets frozen, precluding him from retaining private counsel. (Ra. Ex. 59, Sept. 19, 2002 Hr'g Tr. 3:12-4:3, ECF No. 20.) In response, Judge Pursel stated: "[w]ell, you're mistaken on that fact, Dr. Rambo. The funds were frozen for—for your protection. . . . An application may be made to the [c]ourt to release those funds to hire private counsel. So there is no disability to assess [sic] those funds." (*Id.* at 4:4-10.) Judge Pursel further stated: "[the Chancery Division] froze your assets to protect them. . . . Not to prevent you from hiring an attorney." (*Id.* at 6:1-5.) Petitioner insisted, however, that his assets were unavailable to him, but Judge Pursel responded "I think you're dead wrong. . . . Civil . . . litigation takes a back seat to your [criminal] litigation. . . . It takes a front seat to other creditors." (*Id.* at 8:3-9.)

---

[3] On November 15, 2002, Judge Seybolt of the Chancery Division held a case management conference with respect to the assets initially frozen upon Bruce Rambo's order to show cause. (Ra. Ex. 106, Nov. 15, 2002 Hr'g Tr., ECF No. 24.) At the conference, Judge Seybolt noted that he was troubled about disposing of any of the frozen property at that time because he was "concerned . . . [that the property] may ultimately end up being [Petitioner]'s property." (*Id.* at 7:7-15.)

In a subsequent hearing before the Criminal Part, on October 9, 2002, Petitioner again communicated to the court that he was unable to retain private counsel due to the fact that his assets remained frozen. (Ra. Ex. 61, Oct. 9, 2002 Hr'g Tr. 3:18-4:10, ECF No. 20.) Judge Pursel stated that he received correspondence from Petitioner's son's counsel that argued "that under the law . . . people in your circumstances in his opinion would forfeit any right to have the assets." (*Id.* at 4:11-5:7.) Judge Pursel then indicated that "of course the one thing that [Bruce Rambo's counsel] overlooks is the fact that you're still an innocent person in the eyes of the law. . . . he makes one mistake, you haven't been convicted of anything yet." (*Id.* at 5:2-8.) Judge Pursel proceeded to state: "At any rate, I'm going to authorize the appointment of a public defender for you," until Petitioner, if able, can access assets to retain private counsel. (*Id.* at 5:10-25.)

Petitioner subsequently filed a motion in 2003 in the Chancery Division, requesting access to his portion of the marital assets for the purpose of retaining private counsel in his criminal proceedings. (Ra. Ex. 114, Nov. 7, 2003 Order, at 1-2, ECF No. 24.) Oral argument was held on October 15, 2003, where Petitioner argued that he should have access to his assets to mount a proper defense in his criminal proceeding pursuant to the Sixth Amendment. (Ra. Ex. 107, Oct. 15, 2003 Hr'g Tr. 3:12-19:7.) At oral argument, the Honorable Fred H. Kumpf, J.S.C., denied Petitioner's request under the New Jersey Slayer Statute.[4] At the time, the relevant provision of the New Jersey Slayer Statute provided:

> N.J.S.A. 3B:7-1: A surviving spouse, heir or devisee who criminally and intentionally kills the decedent is not entitled to any benefits under a testate or intestate estate and the estate of decedent passes as if the killer had predeceased the decedent. Property appointed by

---

[4] At the time of Petitioner's request, the relevant provisions of the New Jersey Slayer Statute were codified at N.J.S.A. 3B:7-1 (1982) (repealed 2004) (current version at N.J.S.A. 3B:7-1.1), N.J.S.A. 3B:7-2 (1982) (repealed 2004) (current version at N.J.S.A. 3B:7-1.1), and N.J.S.A. 3B:7-6 (1982) (amended 2004).

the will of the decedent to or for the benefit of the killer passes as if the killer had predeceased the decedent.

N.J.S.A. 3B:7-2: Any joint tenant who criminally and intentionally kills another joint tenant thereby effects a severance of the interest of the decedent so that the share of the decedent passes as his property and the killer has no rights by survivorship. This provision applies to joint tenancies and tenancies by the entirety, joint accounts in banks, savings and loan associations, credit unions and other institutions, and any other form of coownership with survivorship incidents.

N.J.S.A. 3B:7-6: A final judgment of conviction of intentional killing is conclusive for purposes of this chapter. In the absence of a conviction of intentional killing the court may determine by a preponderance of evidence whether the killing was intentional for purposes of this chapter.

In reaching his decision, Judge Kumpf first distinguished the instant case from *Jacobson v. Jacobson*, 376 A.2d 558 (N.J. Super. Ct. App. Div. 1977)—which supported Petitioner's argument—by finding that the statute had been amended in such a way that the assets must remain frozen until the court determined whether Petitioner intentionally killed his spouse. (Ra. Ex. 107, Oct. 15, 2003 Hr'g Tr. 20:24-21:24.) With respect to the Sixth Amendment, Judge Kumpf stated:

> although there is a Sixth Amendment right, that right is not . . . a[n] absolute right. Obviously the [Petitioner] will have . . . an opportunity to have counsel, whether it's a counsel that he pays for or whether [it is] counsel that is provided to him. . . . In the circumstances of this case[,] I conclude that the funds from the sale of the . . . farm are to be held in trust and are not available to [Petitioner] for purposes of his defense in the criminal matter.

(*Id.* at 23:19-24:8.) Moreover, although Judge Kumpf did not specifically discuss the proceeds from the sale of Petitioner's dental practice in relation to the Sixth Amendment, he decided that the proceeds from the sale of the farm "should be held in trust in the *same way* [as] the proceeds from the sale of the dental practice building," indicating that Petitioner would be denied access to

all marital assets including proceeds associated with Petitioner's dental practice. (*Id.* at 23:9-18 (emphasis added).)

Accordingly, on November 7, 2003, the Chancery Division denied Petitioner's motion to access his assets for the purpose of hiring counsel for his criminal proceedings. (Ra. Ex. 114, Nov. 7, 2003 Order, ECF No. 24.) On December 13, 2004, the Chancery Division decided that it would conduct an equitable distribution hearing to determine Petitioner's portion of the marital assets after resolution of the criminal proceeding. (Ra. Ex. 116, Dec. 13, 2004 Order, ECF No. 24.)

Prior to the criminal trial, in a hearing on March 15, 2004 before Judge Pursel in the Criminal Part, Petitioner moved to represent himself at trial. (Ra. Ex. 76, Mar. 15, 2004 Hr'g Tr. 3:18-23, ECF No. 20-2.) Petitioner stated that he made the motion knowingly and voluntarily, but "out of necessity" because the Chancery Division never released his assets for the purpose of retaining private counsel, a private investigator, and expert witnesses. (*Id.* at 3:18-4:11.) In response, Judge Pursel stated, "I have never understood why you've been deprived of your assets." (*Id.* at 9:21-22.) Judge Pursel further stated:

> that may be an issue that is going to come back a long time from now and be revisited. . . . [U]nless you're bankrupt there must be something that would be available for you to use for your defense. I agree with you. However, the Appellate Division has got to do that. I can't do that. There have been two Judges who said no, we're not going to give you the assets. I don't know why. I don't disagree with it because I don't know why they did that. I don't know what the reason for it was. And I have no authority to disagree with it.

(*Id.* at 9:25-10:14.) Accordingly, Petitioner represented himself at trial. (*See* Ra. Ex. 86, Jan. 3, 2005 Trial Tr. 43:8-11, ECF No. 21-1.)

On February 9, 2005, Petitioner was found guilty by a jury of first-degree murder under N.J.S.A. 2C:11-3(a)(1) and (2), and second-degree possession of a weapon for an unlawful purpose

in violation of N.J.S.A. 2C:39-4(a).[5] (Ra. Ex. 2, Judgment of Conviction, ECF No. 14.) On April 22, 2005, Petitioner was sentenced to a forty-year term of imprisonment, of which Petitioner would have to serve thirty years before becoming eligible for parole.[6] (*Id.*)

Following the criminal trial, on July 6, 2005, the Superior Court of New Jersey, Law Division in Somerset County (the "Law Division") issued a judgment against Petitioner in a civil wrongful death action brought by Bruce Rambo. (Ra. Ex. 119, July 6, 2005 Order, ECF No. 24.) The Law Division found Petitioner liable in the amount of: (1) $310,000 for loss of services and counseling to Bruce Rambo; (2) $1,000,000 for pain and suffering; and (3) $5,000,000 for punitive damages. (*Id.*) Subsequently, on August 5, 2005, the Chancery Division transferred the deed of the marital property to Bruce Rambo.[7] (Ra. Ex. 120, Aug. 5, 2005 Order, ECF No. 24.)

Petitioner filed an interlocutory appeal from the Chancery Division to the Appellate Division, where the Appellate Division granted his motion to waive fees but denied his motions for access to free transcripts and assignment of counsel. (Ra. Ex. 122, Dec. 15, 2005 Order, ECF No. 24.) This appeal was later dismissed for Petitioner's failure to prosecute the appeal. (Ra. Ex. 123, Jan. 6, 2006 Order, ECF No. 24.) On January 18, 2006, Petitioner filed a motion to vacate the dismissal of his appeal and reinstate his appeal of the Chancery Division's August 5, 2005

---

[5] New Jersey Superior Court, Law Division, Criminal Part in Warren County (No. 2002-12-472-I).

[6] The trial court directed that the eighty-five percent period of parole ineligibility pursuant to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2, would attach to the ten years remaining on Petitioner's sentence after he had served the initial thirty-year mandatory minimum term. (Ra. Ex. 2, Judgment of Conviction.) The Appellate Division subsequently affirmed the conviction but remanded for re-sentencing to apply NERA to the entire forty year sentence, and Petitioner was sentenced accordingly. *New Jersey v. Rambo*, 951 A.2d 1075, 1085 (N.J. Super. Ct. App. Div. 2008).

[7] On May 1, 2006, the Chancery Division issued a similar order pertaining to an unnamed redacted property. (Ra. Ex. 121, May 1, 2006 Order, ECF No. 24.)

order. (Ra. Ex. 124, Jan. 18, 2006 Mot., ECF No. 24.) The Appellate Division denied Petitioner's motion on February 23, 2006. (Ra. Ex. 125, Feb. 23, 2006 Order, ECF No. 24; *see also* Ra. Ex. 126, Apr. 10, 2006 Order, ECF No. 24 (denying Petitioner's motion for reconsideration); Ra. Ex. 127, July 17, 2006 Order, ECF No. 24 (New Jersey Supreme Court denying petition for certification for lack of prosecution).) Sometime thereafter, Petitioner sought relief from the Chancery Division, requesting that fifty percent of the marital assets be unfrozen. (*See* Ra. Ex. 129, Jan. 5, 2007 Order, ECF No. 24.) Petitioner's request was denied. (*Id.*)

In addition to ongoing civil proceedings, Petitioner filed a direct appeal of his conviction with the Appellate Division, which affirmed his conviction and sentence on July 22, 2008. *New Jersey v. Rambo*, 951 A.2d 1075 (N.J. Super. Ct. App. Div. 2008), *cert. denied*, 556 U.S. 1225 (2009). In the appeal, Petitioner raised an issue with respect to his Sixth Amendment right to counsel of his choice. (*Id.*; Ra. Ex. 3, Pet'r's Br. App. Div. Direct Appeal 26-37, ECF No. 14.) In its decision, the Appellate Division distinguished Petitioner's case from *United States v. Gonzalez-Lopez*, 548 U.S. 140, 142-52 (2006), a case in which the United States Supreme Court decided that "a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitle[d] him to a reversal of his conviction." *Rambo*, 951 A.2d at 1083. The Appellate Division stated:

> In *Gonzalez-Lopez*, the orders which had the effect of depriving defendant of the counsel of his choice were entered in connection with the same matter that was under appeal. The only appeal before this court is from the judgment of conviction. [Petitioner] did not include in his Notice of Appeal the orders entered in the Chancery Division and, indeed, his earlier filed appeal from those orders was dismissed.

*Id.* The Appellate Division further added that Petitioner failed to prosecute his appeal from the Chancery Division's order, and, despite being denied free transcripts, Petitioner could have submitted purely legal arguments to the Appellate Division. *Id.* at 1084. Accordingly, the

Appellate Division determined that it did not have jurisdiction to review the Chancery Division's order to freeze Petitioner's assets. *Id.*

Petitioner proceeded to file a direct appeal to the New Jersey Supreme Court, where he raised his Sixth Amendment right to choice of counsel and where his Petition was summarily denied. *New Jersey v. Rambo*, 962 A.2d 529 (N.J. 2008). Petitioner then filed a petition for certiorari in the United States Supreme Court, and his Petition was again summarily denied. *Rambo*, 556 U.S. at 1225.

In or around February 2009, Petitioner filed another motion to reinstate his appeal from the Chancery Division's orders that froze his assets and, thereby, precluded him from retaining private counsel. (Ra. Ex. 132, Pet'r's Moving Br., ECF No. 24.) The Appellate Division denied Petitioner's appeal without prejudice and permitted Petitioner to file a subsequent appeal after securing a final judgment from the Chancery Division. (Ra. Ex. 134, Mar. 6, 2009 Order, ECF No. 24.) On May 17, 2010, the Chancery Division issued a final judgment ordering:

1. That [Petitioner] shall be and is hereby awarded by way of equitable distribution of the marital assets the sum of $290,314.51.

2. That the debt of $6,000,000, not including interest, which [Petitioner] owes the Estate [of Linda Rambo], shall be credited $290,314.51, making the debt owed to the Estate $5,709,685.49, not including interest.

3. That the administrator of the Estate shall turn over any of the clothing and pre-marital property belonging to [Petitioner] . . . to [Petitioner's] sister. [Petitioner] shall arrange for his sister or her agent to pick up such property from the Estate.

4. That [Petitioner] shall be responsible for paying any taxes the Estate incurs due to the distribution of the [Individual Retirement Account] to the Estate.

(Ra. Ex. 135, May 17, 2010 Order, ECF No. 24.)

Petitioner appealed to the Appellate Division. *In re Estate of Rambo*, No. A-5308-09T2, 2012 WL 1969954 (N.J. Super. Ct. App. Div. June 4, 2012). The Appellate Division solely reviewed the Chancery Division's application of the New Jersey Slayer Statute. *Id.* at *4. The court determined that "[t]he restraints issued, which prevented [Petitioner] from accessing the marital property to fund his defense against charges of murdering his wife, are directly supported by N.J.S.A. 3B:7-1." *Id.* The court further stated that "[t]o permit [Petitioner] to use the proceeds of the marital estate to pay the cost of private counsel would be a perversion of justice and in direct violation of the public policy expressed by the Legislature in N.J.S.A. 3B:7-5." *Id.* As to Petitioner's arguments under the Sixth Amendment, the court merely stated that the arguments "lack[ed] sufficient merit to warrant a discussion in a written opinion." *Id.* Petitioner appealed the Appellate Division's decision, and both the New Jersey Supreme Court and the United States Supreme Court summarily denied Petitioner's appeals. *See In re Estate of Rambo*, 54 A.3d 810 (N.J. 2012); *Rambo v. Estate of Rambo*, 134 S. Ct. 1490 (2014).

On March 23, 2009, Petitioner filed an application for post-conviction relief ("PCR Application") with the New Jersey Superior Court, Law Division, Criminal Part, Warren County (No. 2002-12-472-I). (Ra. Ex. 21, ECF No. 17-1.) Petitioner's PCR Application was ultimately denied. (Ra. Ex. 40, Aug. 10, 2010 Order, ECF No. 18-1.) The Criminal Part determined that Petitioner's Sixth Amendment arguments related to the Chancery Division's application of the Slayer Statute, and declined to review the issue. (*Id.*) Petitioner appealed to the Appellate Division, which affirmed the Law Division's decision. *See New Jersey v. Rambo*, No. A-0382-10T2, 2013 WL 512116, at *1 (N.J. Super. Ct. App. Div. Feb. 13, 2013). The Appellate Division similarly declined to address Petitioner's Sixth Amendment arguments because "[t]he Chancery [Division's] decision [was] not properly before [the Appellate Division]." *Id.* at *4. The Appellate

Division denied Petitioner's appeal (Ra. Ex. 41, Sept. 15, 2010 Notice of Appeal, ECF No. 18-1), and the New Jersey Supreme Court denied his subsequent petition for certification (Ra. Ex. 58, Denial of Pet. for Cert., ECF No. 20).

On February 11, 2014, Petitioner filed the instant Petition (Pet., ECF No. 1), which was served on Respondents in or around October 2014 (ECF Nos. 5, 6, 8). Respondents subsequently requested a sixty-day extension to file their Answer. (ECF No. 9.) The Court granted Respondents' request for an extension. (ECF No. 10.) On February 4, 2015, Respondents filed their Answer. (ECF No. 11.) Respondents, however, submitted correspondence on February 4, 2015 and February 10, 2015, stating that they could not file the relevant exhibits due to technical problems. (ECF Nos. 12, 13.) Respondents finally filed their exhibits on February 18, 2015. (ECF Nos. 14-24.) On March 23, 2015, Petitioner filed his Reply to Respondents' Answer. (ECF No. 26.)

On June 3, 2015, Petitioner submitted correspondence notifying the Court that Respondents had failed to file numerous exhibits that Respondents had listed in their index. (ECF No. 29.) On July 8, 2015, Respondents submitted correspondence setting forth reasons why certain exhibits were missing. (ECF No. 30.) On August 24, 2015, Petitioner filed a motion to compel electronic filing of all missing exhibits and requested an order from the Court that Respondents must "include a certified statement that the DVD's represent a complete and accurate reproduction of all Exhibits filed by . . . Respondents in this matter." (ECF No. 33.) The issues raised in Petitioner's motion to compel were fully briefed by September 16, 2015 (ECF Nos. 34, 35), and the Court denied Petitioner's motion on November 20, 2015 (ECF No. 36).

In addition to Petitioner's motion to compel based on Respondents' allegedly inadequate document production, the parties submitted numerous items of correspondence further analyzing

11

the merits of Petitioner's underlying habeas Petition. (ECF Nos. 27, 31, 32, 37.) On May 26, 2016, the Court granted Respondents' request for an extension to respond to Petitioner's April 27, 2016 correspondence, which further discussed the merits of the Petition. (ECF No. 38.) Accordingly, Respondents filed their response on June 30, 2016. (ECF No. 39.) Petitioner proceeded to file additional substantive correspondence on July 18, 2016 (ECF No. 40), and, on August 2, 2016, Respondents requested another extension to respond to Petitioner's correspondence (ECF No. 42). The Court, however, denied Respondents' request in August 2016, and the parties did not further supplement their voluminous submissions.[8] (ECF No. 43.)

## II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a claim has been adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 567 U.S. 37, 40 (2012). A state court decision is "contrary to" clearly established federal law if the state court (1) "applies a rule that contradicts the governing law set forth in [Supreme Court precedent]," or (2) "confronts a set of facts that are

---

[8] Petitioner's submissions consist of more than three hundred seventy pages, and Respondents' submissions consist of over four thousand four hundred pages. Accordingly, the Court now reaches its decision based on a comprehensive review of the parties' considerable submissions.

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 406 (2000); *see Dennis v. Sec., Pa. Dep't of Corr.*, 834 F.3d 263, 280 (3d Cir. 2016). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 562 U.S. 594, 598 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013).

## III. Parties' Positions[9]

### A. Petitioner

Petitioner argues that his Sixth Amendment right to counsel of his choice was violated because he was unable to use his assets to retain private counsel for his criminal proceeding. (Pet. 18-20.) According to Petitioner, a number of factors contributed to the constitutional violation. First, Petitioner argues that his Sixth Amendment right was violated when the Chancery Division froze his individual and marital assets and precluded him from using those assets to obtain private counsel for his criminal proceedings. (*Id.* at 21.) Moreover, Petitioner argues that the New Jersey Slayer Statute, which was invoked to freeze his individual and marital assets, "was either unconstitutional, as written, or it was unconstitutionally applied [to Petitioner] by the Chancery [Division]." (*Id.* at 22, 35-39.) According to Petitioner, the Chancery Division improperly applied the Slayer Statute and froze more assets than permitted under the statute. (*Id.* at 42-46.) In other words, Petitioner asserts that the Chancery Division froze assets that were untainted by his alleged

---

[9] The Court sets forth the parties' positions only with respect to Petitioner's Sixth Amendment argument. The Court further incorporates into the Discussion section the parties' positions on various issues regarding the State's alleged affirmative defenses. Additionally, the Court acknowledges that the parties submitted supplemental submissions that distinguished or analogized specific cases. (ECF Nos. 27, 31, 32, 37, 39, 40.) The Court similarly incorporates any material analyses from these submissions into its Discussion section below.

criminal conduct. (*Id.*) Petitioner further explains that the Slayer Statute "is solely limited to the portion of the marital assets owned by his wife prior to her death." (*Id.* at 48.)

Additionally, Petitioner asserts that Judge Pursel, who presided over Petitioner's criminal proceeding, failed to address the Sixth Amendment violation and instead permitted Petitioner's trial to proceed. (*Id.* at 30-31.) Petitioner further argues that the Appellate Division similarly did not adequately address the Sixth Amendment violation in every appeal that he filed. (*Id.* at 31, 50-54.) Accordingly, Petitioner asserts that the violation of his Sixth Amendment right to counsel of his choice constitutes a structural error that requires the reversal of his conviction. (*Id.* at 34-35.) Petitioner further argues that although he elected to proceed pro se during his criminal proceedings, he did so only because his Sixth Amendment right to counsel of his choice was already violated, which he made clear on the record. (*Id.* at 25.)

### B.    Respondents

In its Answer, the State responds to Petitioner's Sixth Amendment claim by stating that it relies on the briefs it submitted on direct appeal of Petitioner's conviction and on Petitioner's PCR Application. (Answer 16-17.) The State further notes that it relies on the various decisions by the state courts in this matter. (*Id.* at 17.)

In its brief on direct appeal, the State argued that the Sixth Amendment right to retain counsel of one's choice is not an absolute right. (Ra. Ex. 10, State's Direct Appeal Br. 21, ECF No. 16-2.) The State asserted that Petitioner was unable to choose counsel because he could not afford private counsel at the time, due to his assets being frozen. (*Id.* at 22.) The State further argued that a public defender was provided and that Petitioner knowingly and voluntarily waived his right to counsel and represented himself. (*Id.* at 23-24.)

Specifically, with respect to the application of the Slayer Statute, the State argued that "most of the property owned by the Rambos was held as tenants by the entireties." (*Id.* at 24.) According to the State, Petitioner's share of the marital assets was properly held in a constructive trust pending the outcome of his criminal trial. (*Id.* at 25.) In support, the State relied on *In re Karas*, 469 A.2d 99 (N.J. Super. Ct. Law Div. 1983), *aff'd and modified by*, 485 A.2d 1083 (N.J. Super. Ct. App. Div. 1984). (Ra. Ex. 10, State's Direct Appeal Br. 26.) The State argued that the facts of the instant matter were similar to the facts in *Karas*, and that the outcome should therefore be the same—assets were properly frozen pending the outcome of the criminal trial. (*Id.*) The State next distinguished the instant matter from *Wasserman v. Shwartz*, 836 A.2d 828 (N.J. Super. Ct. Law Div. 2001).[10] (Ra. Ex. 10, State's Direct Appeal Br. 27.) The State argued that: (1) *Wasserman* is a Law Division decision and, therefore, is not controlling authority; (2) the action under the New Jersey Slayer Statute under *Wasserman* was filed after the criminal conviction; and (3) the court in *Wasserman* found that the convicted murderer had dissipated assets that were part of the marital estate and subject to distribution. (*Id.* at 27-28.)

Finally, with regard to the State's briefs in connection with Petitioner's PCR Application, the State's arguments on the issue of the Sixth Amendment right to counsel of choice were limited to procedural arguments. (Ra. Ex. 36, State's PCR Trial Br. 4-9,[11] ECF No. 18; Ra. Ex. 48, State's PCR App. Div. Br. 23-28, ECF No. 19-3.) Specifically, the State argued that, in his PCR

---

[10] In *Wasserman*, the court applied the New Jersey Slayer Statute where a husband was convicted of aggravated manslaughter for slaying his wife. 836 A.2d at 829-30. The *Wasserman* court invoked its equitable powers to equitably distribute the marital assets "in order to recognize" the victim-wife's interest in the marital estate. *Id.* at 832-36.

[11] The Court cites to the page numbers assigned by the electronic filing system as indicated in the header.

Application, Petitioner could not properly raise issues with respect to the Chancery Division's order to freeze his assets because they were outside the scope of his conviction proceedings and that Petitioner's Sixth Amendment right to counsel of his choice was already adjudicated on direct appeal from Petitioner's conviction. (Ra. Ex. 36, State's PCR Trial Br. 4-9, ECF No. 18; Ra. Ex. 48, State's PCR App. Div. Br. 23-28, ECF No. 19-3.)

## IV. Discussion

### A. Respondents' Defenses

#### 1. Jurisdiction

Respondents argue that the Court does not have subject matter jurisdiction over Petitioner's claims that challenge the New Jersey Slayer Statute—a civil statute—and civil state court orders. (Answer 28-29.) Respondents, however, provide no legal analysis in support of this assertion. Contrary to Respondents' cursory argument, the Court's jurisdiction on a petition for the writ of habeas corpus requires a prisoner's custody to be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3), 2254(a). As Petitioner asserts a violation of his Sixth Amendment right to counsel of his choice,[12] Petitioner has adequately established the Court's subject matter jurisdiction over the Petition.

#### 2. Failure to State a Claim

Respondents argue that Petitioner "fail[s] to establish a claim for habeas corpus relief," and that "Petitioner's [F]ederal constitutional rights were clearly not violated or infringed by the alleged errors" raised in the Petition. (Answer 29-30.) As set forth in the Court's Discussion

---

[12] *See infra* Part IV.B.

section, however, Petitioner has established a violation of his Sixth Amendment right to counsel of his choice.[13] *See infra* Part IV.B.

### 3. Exhaustion of Administrative Remedies

In furtherance of this defense, after setting forth the general legal standard, Respondents provide three sentences of cursory analysis, devoid of any citations to the record or relevant legal authority:

> In this case, the [P]etition raised many point headings regarding the [New Jersey] Slayer Statute and the Chancery Division. However, the [P]etitioner did not raise this point heading. Therefore, the request for habeas corpus relief should be denied.

(Answer 31-33.) In light of Respondents' failure to cite to the record in support of their position, and upon the Court's review of the record, the Court finds that Petitioner adequately raised the violation of his Sixth Amendment right to counsel of his choice in the relevant state court proceedings. Accordingly, the Court finds Respondents' exhaustion defense unpersuasive.

---

[13] Respondents argue that "[P]etitioner seeks to cloak his claims on federal law and constitutional issues, [but] in reality, he is challenging a state law and the application of that law in the Chancery Division in his habeas proceeding from his criminal conviction." (Answer 30.) The Court disagrees. Respondents' argument is improperly premised on the assumption that Petitioner's Sixth Amendment right to counsel of his choice was never violated. Respondents' characterization of Petitioner's argument as a mere issue of state law reveals a critical error in Respondents' position with respect to the instant Petition. Respondents' submissions primarily focus on attempting to construe the Sixth Amendment issue as a state law issue pertaining to the application of the New Jersey Slayer Statute and fail to devote adequate analysis to the federal Sixth Amendment implications. Moreover, Respondents' primary reliance on briefs submitted to the state courts on this matter, as opposed to filing updated briefing appropriately tailored to the federal constitutional issues most pertinent on a petition for writ of habeas corpus, resulted in Respondents' undercoverage of the material legal issues and did not aid in furthering Respondents' position.

4.  <u>Procedural Default</u>

In furtherance of this defense, after setting forth the general legal standard, Respondents provide only three sentences of cursory analysis, devoid of any citations to the record or relevant legal authority:

> In this case, [P]etitioner failed to provide any reason for not raising this particular issue previously nor has the [P]etitioner demonstrate [sic] any prejudice because there was no violation of his constitutional rights. Petitioner was fairly convicted and there was no violation of his constitutional rights. Habeas corpus relief should be denied.

(Answer 33-34.) In light of Respondents' failure to cite to the record in support of their position, and upon the Court's review of the record, the Court finds that Petitioner adequately raised the violation of his Sixth Amendment right to counsel of his choice in the relevant state court proceedings. Accordingly, the Court finds Respondents' procedural default defense unpersuasive.

5.  <u>Timeliness</u>

Under the AEDPA, a one-year statute of limitations applies to a writ of habeas corpus by a person in custody from a state court judgment. 28 U.S.C. § 2244(d)(1). The one-year statutory period runs from the latest of the following:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation [with respect to 28 U.S.C. § 2244(d)]." 28 U.S.C. § 2244(d)(2).

Upon reviewing the parties' submissions, the Court finds that Petitioner timely filed the instant Petition within the one-year statute of limitations. The Petition was filed on February 11, 2014. (Pet.) The State's argument that the Petition was filed after the one-year statutory period is based on the State's error. The State identified August 24, 2011 as the date on which "[t]he decision of the trial court was affirmed" by the Appellate Division, with respect to Petitioner's PCR Application. (Answer 37.) In support, the State references Respondents' Exhibit 51. (*Id.*) Respondents' Exhibit 51, however, is merely an order from the Appellate Division permitting Petitioner "to supplement the record by providing transcripts and pleadings." (*See* Ra. Ex. 51, Aug. 24, 2011 Order, ECF No. 20.) Instead, a copy of the pertinent Appellate Division's decision is contained in Respondents' Exhibit 55, which explicitly identifies February 13, 2013—the date identified by Petitioner—as the date the decision was rendered. (Ra. Ex. 55, Mar. 9, 2013 Corresp., ECF No. 20.) Accordingly, after considering the proper date of the Appellate Division's decision with regard to Petitioner's PCR Application, the Court finds that the instant Petition was timely filed.

## B.    Sixth Amendment Right to Counsel of Choice

The Sixth Amendment "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the

defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). Moreover, an "erroneous deprivation of the right to counsel of choice [results in] '. . . consequences that are necessarily unquantifiable and indeterminate, . . . [thus constituting a] structural error.'" *Gonzalez-Lopez*, 548 U.S. at 150 (citation omitted). Accordingly, a wrongful deprivation of a defendant's right to counsel of his choice "is not subject to harmless-error analysis." *Id.* at 152.

A defendant's right to choose his counsel, however, is not absolute and "has limits." *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) (plurality). "A defendant has no right, for example, to an attorney who is not a member of the bar, or who has a conflict of interest due to a relationship with an opposing party." *Id.* (citation omitted). The limitation most pertinent here is that "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice." *Caplin*, 491 U.S. at 626. Where funds are in a defendant's possession unlawfully—i.e., "tainted"—the defendant's Sixth Amendment right to counsel of his choice is not violated when those funds are seized, and the defendant is precluded from using those funds to retain defense counsel in criminal proceedings. *Id.*

Precedent related to the freezing of assets and the effect on a criminal defendant's Sixth Amendment right is largely predicated on the United States Supreme Court's analysis of federal statutes—e.g., 21 U.S.C. § 853—that permit the United States government to seize certain assets where a person has committed certain crimes. *See, e.g., Caplin*, 491 U.S. at 622-34; *United States v. Monsanto*, 491 U.S. 600, 606-16 (1989). When considering these federal statutes, the Supreme Court determined that the crucial inquiry is whether the property is "tainted" because the Sixth Amendment "does not go beyond 'the individual's right to spend his own money to obtain the

advice and assistance of . . . counsel'"—i.e., one does not have a right to spend money he unlawfully obtained and is, therefore, tainted. *Caplin*, 491 U.S. at 626 (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 370 (1985) (Stevens, J., dissenting)).

Here, Petitioner's Sixth Amendment argument arises from the freezing of assets pursuant to the New Jersey Slayer Statute. Unlike 18 U.S.C. § 1345 and 21 U.S.C. § 853, the New Jersey Slayer Statute passes title of certain assets to the victim's estate, as opposed to the government. N.J.S.A. 3B:7-1; N.J.S.A. 3B:7-2. Despite the difference in the recipient of the forfeited property, the inquiry for purposes of the Sixth Amendment remains whether any portion of the frozen assets constituted Petitioner's untainted property. *See Caplin*, 491 U.S. at 626-32. This inquiry remains applicable even where the assets are frozen prior to the conviction on the underlying wrongful act. *Monsanto*, 491 U.S. at 616 ("[W]e find no constitutional infirmity in . . . [the] authorization of a . . . restraint on [the criminal defendant's] property to protect its 'appearance' at trial and protect the community's interest in full recovery of any ill-gotten gains.").

In the underlying criminal proceeding, Judge Pursel recognized that precluding Petitioner from accessing his frozen assets to retain criminal defense counsel would potentially violate Petitioner's Sixth Amendment right to counsel of his choice. Specifically, Judge Pursel indicated that Petitioner should have access to his frozen assets because he remains an "innocent person in the eyes of the law" prior to conviction, and because "civil litigation takes a back seat to . . . [criminal] litigation." (*See* Ra. Ex. 59, Sept. 19, 2002 Hr'g Tr. 8:3-9; Ra. Ex. 61, Oct. 9, 2002 Hr'g Tr. 5:2-8.) When the Chancery Division failed to grant Petitioner access to his frozen assets to retain private counsel in his criminal proceeding, Judge Pursel stated on the record that he "never understood why [Petitioner was] deprived of [his] assets." (Ra. Ex. 76, Mar. 15, 2004 Hr'g Tr. 9:21-22.) While Judge Pursel determined that he did not possess the authority to release assets

that were restrained by the Chancery Division, Judge Pursel predicted that Petitioner's Sixth Amendment right to counsel of choice "may be an issue that is going to come back a long time from now and be revisited." (*Id.* at 9:25-10:14.) More than a decade after Judge Pursel's statements, the Sixth Amendment issue has "come back," and this Court must revisit the issue recognized by Judge Pursel. Accordingly, the Court performed a painstaking review of the extensive record in this matter. In order to determine whether Respondents violated Petitioner's Sixth Amendment right to counsel of his choice, the Court must initially determine whether the assets Petitioner sought to release in order to fund his defense were tainted, a fundamental determination that Judge Pursel recognized and the Chancery Court failed to perform.

To determine whether any of the frozen assets were untainted, the Court first looks to the Chancery Division's final judgment applying the New Jersey Slayer Statute. On May 17, 2010, after Petitioner was convicted, the Chancery Division determined that Petitioner was entitled to $290,314.51 by way of equitable distribution.[14] (Ra. Ex. 135, May 17, 2010 Order.) The Chancery Division proceeded to credit the $290,314.51 toward Petitioner's $6,000,000 debt to Linda Rambo's Estate arising from a civil judgment against Petitioner for the wrongful death of his wife.[15] (*Id.*)

---

[14] New Jersey law applies equitable distribution, which is typically applied in divorces, where one intentionally kills his or her spouse. *See Jacobson v. Jacobson*, 370 A.2d. 65, 68 (N.J. Super. Ct. Ch. Div. 1976).

[15] Here, the Court does not reach a determination as to whether the attachment of a debt to Linda Rambo's Estate arising from a judgment in a wrongful death action infringes on Petitioner's right to choose counsel because the debt was attached *after* the conviction—i.e., after Petitioner would have received his portion of the untainted funds to hire private counsel. *Cf. Estate of Lott v. O'Neill*, No. 16-389, 2017 WL 462184, at *1-6 (Vt. Feb. 3, 2017) (finding that attaching the civil wrongful death judgment to the criminal defendant's funds, such that it prevented the criminal defendant from retaining his chosen private counsel, did not violate the criminal defendant's Sixth Amendment right to choose counsel).

As the issue before the Court is whether the underlying state court decisions erroneously applied clearly established *federal* law, the Court defers to the Chancery Division's determinations under *state* law that: (1) equitable distribution was appropriate where the New Jersey Slayer Statute applied; and (2) $290,314.51 was the appropriate award to Petitioner by way of equitable distribution of the marital assets.[16]  (Ra. Ex. 135, May 17, 2010 Order.)  Based on the Chancery Division's decision, therefore, Petitioner owned, at minimum, $290,314.51 even after the conviction.  In other words, at least $290,314.51 constituted Petitioner's untainted property prior to the conviction.  *See Monsanto*, 491 U.S. at 616 (holding that if the appropriate pretrial determination required by the forfeiture statute is reached, assets may be frozen pre-conviction if those assets would be forfeitable upon conviction).

---

[16] The Court similarly defers to the decision by the Appellate Division affirming the Chancery Division's decision with respect to these determinations. *In re Estate of Rambo*, 2012 WL 1969954, at *1-4. The Court notes that the state court decisions applying the New Jersey Slayer Statute or common law authority in similar cases do not appear to provide clear guidance with respect to the application of equitable distribution, the precise manner by which marital assets are apportioned or forfeited, or whether state law requires a criminal defendant to access frozen funds to pay for his criminal defense. *See Neiman v. Hurff*, 93 A.2d 345, 348-49 (N.J. 1952) (holding, prior to enactment of the New Jersey Slayer Statute, that the victim should be presumed to have survived the wrongdoer and that the victim's sole beneficiary was entitled "to an absolute *one-half* interest and a remainder interest in the *other half*, subject only to the value of the life estate of the defendant in such half") (emphasis added); *Wasserman*, 836 A.2d at 834 (applying equitable distribution under the New Jersey Slayer Statute such that the wife's estate would be entitled to its "interest or share . . . in the marital property"); *Jacobson*, 376 A.2d at 561 ("[W]e reverse that portion of the order of the Chancery Division denying defendant the right to withdraw any funds to pay his attorneys' fees and costs in connection with the defense of the indictment pending against him . . . ."); *D'Arc v. D'Arc*, 421 A.2d 602, 604 (N.J. Super. Ct. App. Div. 1980) ("[A] plaintiff cannot be permitted to obtain *any distribution* from a woman whom he tried to have murdered.") (emphasis added); *In re Estate of Karas*, 469 A.2d at 102-03 (finding that the New Jersey Slayer Statute changed the common law, which "would impose a constructive trust on the killer's remainder for the benefit of the decedent's heirs," such that "the constructive trust on the killer's *one-half* would be for the benefit of *his* heirs") (first emphasis added).  Accordingly, despite the parties' extensive analysis pertaining to the proper application of the New Jersey Slayer Statute as to the division of assets, the Court does not conduct an independent analysis with respect to this issue.

Under the New Jersey Slayer Statute, an alleged killer only loses benefits to the marital assets upon a determination that the victim was intentionally killed by either a preponderance of the evidence or by criminal conviction. N.J.S.A. 3B:7-6. Prior to the conclusion of the criminal proceeding, the Chancery Division never determined by a preponderance of the evidence that Petitioner intentionally killed his wife. Rather, the Chancery Division froze the marital assets pending resolution of the criminal trial, at which point the Chancery Division finally made the requisite determination based on Petitioner's conviction. Accordingly, absent a determination as to whether any portion of the marital assets was untainted, Petitioner was improperly precluded from accessing his untainted portion of the marital assets prior to his conviction. As a result, the Court finds that "the relevant state-court decision[s] applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Although the AEDPA "'imposes a highly deferential standard for evaluating state-court rulings,'"[17] the state court decisions on Petitioner's direct appeal and PCR Application never addressed Petitioner's Sixth Amendment argument on its merits. On direct appeal, the Appellate Division determined that it did not possess jurisdiction over the issue as a matter of state law. *Rambo*, 951 A.2d at 1083-84. Petitioner's subsequent appeals to the New Jersey Supreme Court and the United States Supreme Court were summarily denied without discussion of the Sixth Amendment issue. *See generally Rambo*, 962 A.2d at 529; *Rambo*, 556 U.S. at 1225. Petitioner's subsequent PCR Application and related appeals resulted in the same determinations. (*See* Ra. Exs. 21, 40, 41, 58); *Rambo*, 2013 WL 512116, at *1. Accordingly, the Court is unable to defer

---

[17] *Felkner*, 562 U.S. at 598 (citation omitted).

to the state court decisions on Petitioner's direct appeal and PCR Application with respect to the Sixth Amendment, as no conclusions were drawn on the merits.

Similarly, minimal deference is owed to the state court decisions on the related civil matter. Initially, when Bruce Rambo filed an order to show cause with the Chancery Division in August 2002, the Chancery Division froze "*all assets* of [Petitioner] . . . , wherever located," and enjoined Petitioner "from expending *any sums of money owned individually* or as a marital asset." (Ra. Ex. 109, Aug. 28, 2002 Order 1-2 (emphasis added).) From the outset, Petitioner's assets were frozen without any determination as to which assets were tainted by Petitioner's alleged murder of his wife.[18]

In 2003, Petitioner filed a motion in the Chancery Division "to utilize assets or funds held by the Estate for his criminal defense," which the court denied. (Ra. Ex. 114, Nov. 7, 2003 Order 1-2.) Here, the Chancery Division actually addressed Petitioner's Sixth Amendment argument but its conclusions were "objectively unreasonable." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012). The Chancery Division first identified certain properties that were held by Petitioner and his wife in tenancies by the entirety and interpreted the New Jersey Slayer Statute as requiring all marital assets to remain frozen until a determination was made as to whether Petitioner intentionally killed his wife. (Ra. Ex. 107, Oct. 15, 2003 Hr'g Tr. 20:2-21:24.) With respect to the Sixth Amendment, the Chancery Division provided only cursory analysis:

> And although there is a Sixth Amendment right, that right is not . . . a[n] absolute right. Obviously the [Petitioner] will have . . . an opportunity to have counsel, whether it's a counsel that he pays for

---

[18] Although it appears that the Chancery Division froze assets that were undisputedly Petitioner's property and not marital assets, Petitioner's submissions focus on his inability to access his portion of *marital* assets as the cause for his inability to retain private counsel. (*See generally* Petition.) Accordingly, the Court focuses its analysis on Petitioner's lack of access to his portion of the *marital* assets.

or whether counsel that is provided to him. *State v. Ray*[19] indicates that [Petitioner's] right to counsel of his choice is not absolute and must give way when required by the fair and proper administration of justice. In the circumstance[s] of this case[,] I conclude that the funds from the sale of the . . . farm are to be held in trust and are not available to Dr. Rambo for purposes of his defense in the criminal matter.

(*Id.* at 23:19-24:8.) Although the Chancery Division was correct that the Sixth Amendment right to counsel of choice is not absolute, clearly established federal law dictates that the seizure of untainted assets amounts to an encroachment on that right. *See Caplin*, 491 U.S. at 624-33; *Monsanto*, 491 U.S. at 611-16. When the Chancery Division arrived at a final determination under the New Jersey Slayer Statute after Petitioner's conviction, the final judgment did not contain any analysis of Petitioner's Sixth Amendment right to counsel of his choice, and, therefore, is not owed any deference with respect to that issue. (*See* Ra. Ex. 135, May 17, 2010 Order.)

Similarly, when Petitioner ultimately appealed from the Chancery Division's final judgment applying the New Jersey Slayer Statute, the Appellate Division dismissed Petitioner's Sixth Amendment argument in conclusory fashion, stating that it "lack[ed] sufficient merit to warrant a discussion in a written opinion." *In re Estate of Rambo*, 2012 WL 1969954, at *4. Additionally, the New Jersey Supreme Court and the United States Supreme Court summarily denied Petitioner's subsequent appeals without discussing the Sixth Amendment issue. *See In re Estate of Rambo*, 54 A.3d 810 (N.J. 2012); *Rambo v. Estate of Rambo*, 134 S. Ct. 1490 (2014).

Accordingly, the Court finds that Petitioner's Sixth Amendment right to counsel of his choice was violated due to the combination of: (1) the Chancery Division's pretrial restraint of Petitioner and his wife's marital assets, and subsequent refusal to release any of Petitioner's untainted portion of the marital assets for his criminal defense; (2) the Chancery Division's failure

---

[19] The Chancery Division's decision does not provide a citation.

to determine the applicability of the New Jersey Slayer Statute until *after* Petitioner's conviction and *after* the denial of Petitioner's request for the release of his assets; and (3) the Criminal Part's decision to proceed to trial even though Petitioner was unable to access his assets to retain private counsel. The Court's decision was further necessitated by the state courts' decisions, on direct appeal from Petitioner's conviction and with respect to his PCR Application, not to address the merits of Petitioner's Sixth Amendment violation based on state procedural rules, despite the significant and direct ramifications of a Sixth Amendment violation on a criminal conviction. The adjudication with respect to Petitioner's Sixth Amendment right, therefore, was contrary to clearly established federal law, as determined by the United States Supreme Court. Moreover, as this violation constitutes a structural defect, the Court need not engage in an analysis as to whether the violation was harmless. *See Gonzalez-Lopez*, 548 U.S. at 150, 152 (citation omitted).[20]

---

[20] As the Court finds that Petitioner's Sixth Amendment right to counsel of his choice was violated, the Court does not reach Petitioner's other grounds for relief.

## V.    Conclusion

For the reasons set forth above, the Petition is GRANTED. Petitioner's judgment of conviction is VACATED. The State shall have 90 days from the entry of the accompanying Order to determine whether to initiate a new trial against Petitioner or to release him from incarceration.[21]

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** September 1, 2017

---

[21] The Court notes for the benefit of Respondents that merely initiating a new trial against Petitioner may not cure the Sixth Amendment violation if Petitioner remains unable to retain the counsel of his choice. Due to the fact that at least $290,314.51 of Petitioner's untainted assets were applied to the civil judgement he owed to Linda Rambo's Estate, Petitioner may no longer have access to those funds, which he should have had available to him prior to his conviction. Whether a Sixth Amendment violation persists will likely involve a fact-sensitive inquiry that the Court does not reach in the instant decision.